**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| ROBERT ABT and THERESA ABT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-129 |
| | § | |
| DICKSON EQUIPMENT COMPANY, | § | |
| INC., DICKSON COMPANY OF TEXAS, | § | |
| and GREENS PORT SHIP CHANNEL | § | |
| PARTNERS, L.P., | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

This case arises out of the personal injuries sustained by Robert Abt ("Plaintiff") when the pedestal supporting his crane cab broke, causing him to fall into the Houston Ship Channel.  Now before the Court is Defendant Greens Port Ship Channel Partners, L.P.'s ("Greens Port") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue.  For the reasons stated below, Greens Port's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**, and Plaintiffs Robert and Theresa Abt's lawsuit is hereby **DISMISSED WITHOUT PREJUDICE**.  Greens Port's Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.

## I. Background

Plaintiff alleges that he was injured on January 29, 2006, when the crane that he was operating broke, causing him to fall into the Houston Ship Channel (the "Channel").  At the time, Plaintiff was employed as a longshoreman crane operator by Richardson Stevedoring & Logistics

("Richardson") at Greens Port Terminal on the Channel.  When the alleged accident occurred, Plaintiff was in the crane's cab, operating the crane.  Although he was not operating the crane to service a vessel, he was positioned over the water.  While over the water, the pedestal supporting the raised cab allegedly sheared at its base, causing him to fall into the Channel along with parts of the crane.  Plaintiff claims that after he fell into the Channel, he managed to swim to a fender, and then was able to hold on for approximately thirty minutes before he was rescued.

Plaintiff brought suit pursuant to this Court's admiralty jurisdiction within the meaning of Fed. R. Civ. P. 9(h) for negligence, gross negligence and premises liability, among other tort claims. Greens Port filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction on the ground that this matter does not fall within the admiralty and maritime jurisdiction of the Court.[1]

## II.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A.  Legal Standard

District courts are powerless to exercise jurisdiction in excess of the limited jurisdiction statutorily conferred upon them by Congress.  *See Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973,

---

[1]Admiralty jurisdiction is the only possible basis for subject matter jurisdiction in this lawsuit.  Jurisdiction does not arise under the federal question statute, 28 U.S.C. § 1331, because this action does not arise from the Constitution, laws or treaties of the United States.  Jurisdiction does not arise under the diversity statute, 28 U.S.C. § 1332, because complete diversity does not exist as Parties on both sides of this dispute are residents of Texas.  Jurisdiction does not arise under the Longshore and Harbor Workers' Compensation Act ("LHWCA") because § 905(b) cannot be used as a vehicle for invoking the Court's admiralty and maritime jurisdiction and Plaintiff does not allege injury by negligence of a vessel.  *See* 33 U.S.C. § 905(b); *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1262, 1263 (5th Cir. 1986).  Finally, the Admiralty Extension Act ("AEA") does not confer jurisdiction because Plaintiff does not allege that his injury was caused by a vessel or a defective appurtenance of a ship on navigable waters.  *See* 46 U.S.C. § 740.  *See also Victory Carriers, Inc. v. Law*, 404 U.S. 202, 211–12, 92 S. Ct. 418, 425, 30 L. Ed. 2d 383 (1971); *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 210, 83 S. Ct. 1185, 1188, 10 L. Ed. 2d 297 (1963).

976 (5th Cir. 1987).  A case is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the case.  *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984).  A complaint filed by a plaintiff seeking to invoke the jurisdiction of a federal court must affirmatively state the grounds that give rise to the Court's jurisdiction over the claims asserted.  *See* FED. R. CIV. P. 8(a).  If the defendant subsequently challenges the plaintiff's stated basis for jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *See Harvey Const. Co. v. Robertson-CECO Corp.*, 10 F.3d 300, 303 (5th Cir. 1994); *Margin*, 812 F.2d at 976.  A court's consideration of such jurisdictional disputes should, however, focus only on discerning "some discreet jurisdiction requisite," as indicated by the facts alleged in the plaintiff's complaint; the inquiry should not address the merits of the plaintiff's claim. *Green v. Ferrell*, 664 F.2d 1292, 1294 (5th Cir. 1982).

    *B.  Admiralty Jurisdiction*

    To establish admiralty jurisdiction under 28 U.S.C. § 1333(1) over a tort claim, a plaintiff must show both a maritime situs and a connection to maritime activity.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995); *Sisson v. Ruby*, 497 U.S. 358, 360–66, 110 S. Ct. 2892, 2895–98, 111 L. Ed. 2d 292 (1990). The maritime situs test requires that Plaintiff show that his injury occurred on navigable waters or, if suffered on land, that it was caused by a vessel on navigable waters.  *See Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048; *Hufnagel v. Omega Service Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999).  The Court engages in a two-part inquiry in determining whether a sufficient maritime nexus exists: (1) whether the incident has a potentially disruptive impact on maritime commerce, and (2) whether "the general character of the activity giving rise to the incident shows a substantial relationship to

-3-

traditional maritime activity." *Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048.  *See Scarborough v. Clemco Indus.*, 391 F.3d 660, 663 (5th Cir. 2004).

       *1.  Maritime Situs*

       The maritime situs test requires that Plaintiff show that his injury occurred on navigable waters, or if suffered on land, was caused by a vessel on navigable water.  *See Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048 (citing 46 U.S.C. App. § 740).  When the accident giving rise to this lawsuit occurred, Plaintiff was in the crane's cab.  The crane was attached to the dock but was positioned over the water.  The crane then broke and Plaintiff fell into the Channel.  Plaintiff claims that he was the Channel for some time before he was rescued.  Plaintiff argues that because he was injured from the impact with the *water*, he has met the locality prong.  In support of this argument, Plaintiff relies upon *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127 (5th Cir. 1988), in which the Fifth Circuit found admiralty jurisdiction where a seaman had been injured when climbing on a vessel's ladder that had been damaged sometime prior when a shore-based crane dropped an engine on the ladder.  *See id.* at 128.  In *Taylor*, the Fifth Circuit noted that "[t]he fact that [the] negligence or the defect in its equipment may have occurred on land is thus not decisive."  *Id.*  Plaintiff also relies upon *Parker v. Gulf City Fisheries*, 803 F.2d 828 (5th Cir. 1986).  In *Parker*, the Fifth Circuit found that a claim against a land-based doctor for negligence in giving medical advice to the wife of a patient, a seaman, when the patient was at sea fell within the parameters of admiralty jurisdiction.  The Court agrees that a tort may still be cognizable in admiralty even when the actual negligence occurs on land.  Therefore, the fact that the alleged negligence giving rise to Plaintiff's injuries almost certainly occurred on land is not dispositive of the maritime locality requirement.

-4-

Greens Port argues that the injury did not occur on navigable waters, and relies primarily upon *Smith & Son, Inc. v. Taylor*, 276 U.S. 179, 48 S. Ct. 228, 72 L. Ed. 520 (1928). In that case, a longshoreman was killed during the course of unloading a vessel when he was struck by a cargo-laden sling that he had attempted to catch and steady. *Id.* at 180, 48 S. Ct. at 229. When the decedent was struck, he was knocked off the stage into the water, and was later found dead. *Id.* The Supreme Court found that admiralty jurisdiction did not exist because the "substance and consummation of the occurrence which gave rise to the cause of action took place on land." *Id.* at 182, 48 S. Ct. at 229. Greens Port argues that the accident in this instance took place on land, and that Plaintiff's only nexus is that he happened to land in navigable waters.

Although Plaintiff's situation is similar to the one in *Smith & Son*, in that both involve activities on land and navigable waters, the Court is reluctant to find *Smith & Son* controlling on the issue of maritime situs. *See Taylor*, 861 F.2d at 128 ("The dividing line between maritime and nonmaritime jurisdiction is often unclear. Some of the most troubling cases entail situations...involving activities both on land and on navigable waters."). In *Smith & Son*, the impact which lead to the injury occurred when the sling struck the decedent. In the present case, the impact leading to Plaintiff's injuries occurred when Plaintiff hit the water. That fact, combined with Plaintiff's allegation that he was left in the Houston Ship Channel for approximately thirty minutes after the accident took place, potentially exacerbating any injuries, compels the Court to conclude that Plaintiff meets the locality test and that Plaintiff's injuries occurred on navigable waters.[2]

### 2. Maritime Nexus

---

[2] The Court does acknowledge that the circumstances present a close case, and its analysis and conclusion is tailored to the limited facts before it.

Next, the Court engages in a two-part inquiry to determine whether a sufficient maritime nexus exists: (1) whether the incident has a potentially disruptive impact on maritime commerce, and (2) whether "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048.  Although the incident giving rise to this lawsuit is of the type that has the potential to disrupt maritime commerce, it is not of a character showing a substantial relationship to maritime activity.

The incident giving rise to this lawsuit involved the shearing of a land-based crane into a body of water.  While there are no allegations or evidence presently before the court indicating that this specific incident did in fact disrupt maritime commerce on the Houston Ship Channel, that is not the test before the Court. The Court is required to focus "not on the specific facts at hand but on whether the 'general features' of the incident [are] 'likely to disrupt commercial activity.'" *Grubart*, 513 U.S. at 538 (citing *Sisson*, 497 U.S. at 363, 110 S. Ct. at 2896). The "general features" of the incident are that of a crane breaking and falling into a shipping channel.  *Id.* at 539.  As to its potential to disrupt maritime commerce, the crane could have landed on a ship, it could have prevented travel on the Channel, and it could have caused problems from its position on the bed of the Channel.  Vessel operation at the Greens Port terminal had the potential to be disrupted not only to remove the debris of the crane, but also to rescue Plaintiff.  Therefore, the incident giving rise to this lawsuit could have disrupted maritime commerce on the Houston Ship Channel.

Finally, the Court looks to whether the general character of the activity giving rise to the incident shows a substantial relationship to maritime activity.  The Court concludes that it does not.  When the crane broke, it was not providing services to a vessel in navigable waters, Plaintiff was simply moving the crane from one end of the dock to the other.  There is no evidence that the crane

-6-

was either engaged in servicing a vessel, or preparing to service a vessel at the time of the events giving rise to this lawsuit.

Again, Plaintiff relies upon *Taylor* in support of its argument that a substantial relationship to maritime activity exists. However, there are key differences between the facts in *Taylor* and the facts of this case. In *Taylor*, a seaman brought suit against a crane company. *See Taylor*, 861 F.2d at 128. Prior to the seaman's injury, one of the company's cranes was being used to lift an engine from a vessel, it then dropped the engine back onto the vessel, damaging one of the vessel's ladders. *Id.* At least one day later, the vessel was on navigable waters, the seaman was on the vessel, and in the course of performing his regular duties, the seaman stepped onto the damaged ladder and slipped and fell onto the vessel's deck. *Id.* The Fifth Circuit sustained admiralty jurisdiction in that case, noting the maritime nature of "a seaman injured in the course of his duties on a *vessel* in navigable waters by falling off a defective *vessel* ladder rung onto the *vessel* deck." *Id.* at 129 (emphasis added). Unlike the injured party in *Taylor*, Plaintiff is not a seaman. Second, his injury did not take place on a vessel nor was it connected in any way to a vessel on navigable waters. Although Plaintiff is correct in noting that there is no "vessel requirement" in the test for admiralty and maritime jurisdiction, the presence of or connection to a vessel permeates the cases where admiralty jurisdiction has been upheld. *See, e.g.*, *Grubart*, 513 U.S. at 540, 115 S. Ct. at 1051 ("...the 'activity giving rise to the incident' in this suit...should be characterizes as repair or maintenance work on a navigable waterway performed from a vessel. Described in this way, there is no question that the activity is substantially related to traditional maritime activity, for barges and similar vessels have traditionally been engaged in repair work similar to what Great Lakes contracted to perform here."); *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 441 (5th Cir. 1991) (noting that

-7-

"[i]njuries caused by slip and fall accidents on board a vessel have consistently been found to constitute maritime torts"); *Taylor*, 861 F.2d at 128 (admiralty jurisdiction existed over seaman's claim when he fell to the vessel's deck from ladder damaged by land-based crane's negligence); *Parker v. Gulf City Fisheries*, 803 F.2d at 830 ("It is difficult to conceive of a tort more intimately related to maritime activities than causing illness to a seaman during the course of a voyage."); *Kamani v. Port of Houston Authority*, 702 F.2d 612, 613 (5th Cir. 1983) (noting admiralty jurisdiction where appellant was a longshoreman injured by a land-based crane while working on a vessel in navigable waters).

The Court cannot help but conclude that this case is more akin to the circumstances of *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972) than to traditional admiralty suits.  In *Executive Jet*, the Supreme Court held that there was no admiralty jurisdiction where seagulls caused an airplane to crash and eventually sink into navigable waters because the wrong (failing to keep the runway clear of seagulls) bore no significant relationship to traditional maritime activity.  *See id.* at 270–72, 93 S. Ct. at 506–07.  In this case, Plaintiff's tort claims are land-based.  It is merely a "fortuitous circumstance" that the crane broke over the Houston Ship Channel rather than over land.  *See Watson v. Massman Construction Co.*, 850 F.2d 219, 221 (5th Cir. 1988) (finding that no admiralty jurisdiction existed over survivors claims where bridge construction worker fell to his death in the Mississippi River).  *See also McCullum v. United Int'l Corp.*, 493 F.2d 501, 501 (5th Cir. 1974). Finally, Plaintiff has not cited any cases in which courts have upheld admiralty jurisdiction in circumstances similar to these.

Given the absence of any connection to a vessel, and the significant connection to land and the land-based nature of Plaintiff's tort claims, the Court must conclude that the incident in question

does not demonstrate a substantial relationship to maritime activity and that admiralty jurisdiction, under the specific facts and circumstances of this case, is lacking.

## III.  Motion to Dismiss for Improper Venue

Given that the Court has found that it lacks subject matter jurisdiction over this case, Defendant's Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.

## IV.  Conclusions

Before concluding, the Court wishes to compliment both Parties' Counsel on the zealous advocacy displayed in their well-prepared and articulate briefs.  For all of the reasons set forth above, and after careful examination of the specific facts of this lawsuit coupled with the applicable law, the Court finds that this case does not fall within the Court's admiralty and maritime jurisdiction. The Court does not have subject matter jurisdiction over this case.  Therefore, Greens Port's Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby **GRANTED**, and Greens Port's Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.  Plaintiffs Robert and Theresa Abt's claims against all Parties are **DISMISSED WITHOUT PREJUDICE**.  A Final Judgement shall be issued contemporaneously with this Order.  Each  Party is to bear his or its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 22nd day of June, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge

-9-